IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREA MEAD, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, INC. | : | NO. 14-2695 |

MEMORANDUM

Bartle, J.                                                      March 17, 2015

        Plaintiffs Andrea Mead ("Mead") and her husband William Danowski ("Danowski") in their own right and as assignees of the Estate of Jeffrey Nedoroscik and the Petwin Unit Owners Association bring this diversity action against defendant Travelers Indemnity Company of Connecticut, Inc., ("Travelers") which insured plaintiffs' condominium property located in Washington, D.C.[1] Plaintiffs have sued to recover damages caused by a fire at that property on December 4, 2012. Travelers has denied insurance coverage. It asserts that the policy was canceled effective October 28, 2012 for failure to pay the premium. The substantive law of the District of Columbia governs.

        Now before the court is the motion of Travelers for summary judgment as to all of plaintiffs' claims. In addition, plaintiffs have pending a cross-motion for summary judgment on the

---

[1] Plaintiffs were citizens of Pennsylvania when this action was filed. The defendant is incorporated in Connecticut and has its principal place of business in that state.

issue of estoppel.  Travelers has moved to strike plaintiffs' cross-motion as untimely.

I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Rule 56(c)(1) states:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or ... showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the plaintiffs. Id. at 252.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must

be evidence on which the jury could reasonably find for the plaintiff." Id.

When ruling on a motion for summary judgment, we may only rely on admissible evidence. See, e.g., Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999). We view the facts and draw all inferences in favor of the nonmoving party independently for each cross-motion. Pichler v. UNITE, 542 F.3d 380, 386 (3d Cir. 2008). However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

II.

The following facts are undisputed or taken in the light most favorable to plaintiffs. Mead owned a condominium in Washington, D.C. where she lived at the time with Danowski. She and Jeffrey Nedoroscik ("Nedoroscik"), another condo owner, were the only members of the Petwin Unit Owners Association (the "Association") during the relevant time period.

Nedoroscik obtained a Travelers insurance policy on behalf of the Association through a broker, Service First Insurance ("Service First"). In July 2012 Travelers renewed the Association's policy, Policy Number I-660-6555M176-TCT-12, for one year effective September 8, 2012 to September 8, 2013.

It was Nedoroscik's responsibility to use each condo owner's association fees to pay the policy premium, and he was the point of contact for the Association for purposes of insurance.  The premium of $1,457 was due on September 8, 2012, but the Association did not timely pay it.  Travelers thereafter initiated steps to cancel the policy for nonpayment of premium.

Under the Municipal Regulations of the District of Columbia, an insurer must perform certain actions in order to cancel an insurance policy.  D.C. Mun. Regs. tit. 26-A, § 301.  Should the insurer fail to take the enumerated steps, the insured is entitled to renewal of the policy:

> Cancellation by an insurer shall be permissible and effective with respect to a policy only if each of the conditions in this section is met with respect to that cancellation.... Unless the insurer complies with each of the conditions specified in this section, a policyholder has a right to renewal for an additional period of time equivalent to the expiring term if the agreed term is a year or less, or for one year if the agreed term is longer than one year.

Id. § 301.1.  One action that an insurer must take before cancellation is effective is to inform any broker who wrote the policy of the insurer's intent to cancel it five days before informing the insured:

> At least five (5) days before sending the notice of cancellation or nonrenewal ... the insurer shall notify the insurance agent or broker who wrote the policy being nonrenewed or cancelled.

Id. § 301.5. The Association's policy contains language reflecting this requirement. It provides:

> We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.  <u>At least five days before sending notice to the first Named Insured, we will notify the agent or broker, if any, who wrote the policy</u>.

(Emphasis added).

The parties vehemently disagree over whether such a Notice of Intent to Cancel was ever sent to Service First, the Association's broker. The Notice of Intent to Cancel has not been produced in discovery. Travelers has explained that any copy that existed would have been destroyed pursuant to its document retention policy.[2] It relies on other evidence to show that it complied with the terms of the insurance contract and the law of the District of Columbia. According to Travelers, its billing system, called the Direct Billing System ("DBS"), maintained and automatically generated billing documentation for the Association's account without any human input. The DBS purportedly generated and sent a Notice of Intent to Cancel to Service First on September 10, 2012. The Notice, Travelers asserts, was viewable by the broker

---

[2] We previously denied plaintiffs' motion for sanctions which was based on this destruction. See Mead v. Travelers Indem. Co. of Conn., Civil Action No. 14-2695, 2014 WL 6832914, --- F. Supp. 3d --- (E.D. Pa. Dec. 4, 2014).

electronically on a "portal" site and was also sent by first-class, postage-prepaid mail.  Travelers points to three notations in the DBS data logs that it contends are evidence that a Notice of Intent to Cancel was generated and sent.

These records notwithstanding, Service First's computer systems do not show the receipt of any Notice of Intent to Cancel.  The broker further confirmed that it did not receive any such notice in paper or electronic form.  Plaintiffs rely on these representations and the absence of any copy of the Notice of Intent to Cancel to argue that Travelers failed to cancel the policy.

It is not disputed that plaintiffs themselves and Service First received an actual Notice of Cancellation from Travelers on September 18, 2012.  This document advised plaintiffs that the policy would be canceled on October 28, 2012, effective as of September 8, 2012, if no payment was received by that date.  Indeed, the Association attempted to make a payment by phone, which was posted by Travelers on October 29, 2012.  However, the payment was not honored by the Association's bank because it could not locate the account number provided to it.

Travelers then sent another letter to the Association stating that the attempted payment needed to be replaced by November 24, 2012 in order to avoid retroactive cancellation to October 28, 2012.  The Association did not pay the premium, and Travelers then reached out to Service First about the situation.

-6-

The Association attempted to make another telephone payment on December 4, 2012, which the bank again ultimately dishonored.

On the same day that the Association attempted payment, a fire occurred at the condominium building.  Tragically, Nedoroscik died in the incident.  The cause of the fire is unknown.

Travelers was informed of the fire on December 5, and it was notified of Nedoroscik's death the next day.  Nonetheless, a Travelers customer service billing representative left a voicemail for Nedoroscik on December 17, 2012, nearly two weeks after the fire and his death, advising him that the attempted payment of December 4 had been unsuccessful and that the policy would be canceled effective October 28, 2012 unless Travelers received a check from the Association via mail by January 1, 2013.  No payment was ever transmitted.

Despite the lack of payment, Travelers' claims adjuster processed the claim for several weeks starting a couple days after the fire.  The adjuster explained to a representative of Nedoroscik's Estate as well as to Mead during this time that the policy "covers all damage to the building with the exception of improvements made directly to the units at the expense of the unit owners" and noted that payments for repairs would be issued soon.  The adjuster continued his work until Travelers finally notified Mead on January 29, 2013 that the policy was canceled as of January 15, 2013, retroactive to October 28, 2012.  Mead thereafter

attempted to pay the premium on the Association's behalf but was not permitted to do so.

Mead later filed a complaint with the District of Columbia Department of Insurance Securities & Banking ("DISB"). On May 14, 2013 a Consumer Services Specialist from the DISB replied by letter that Travelers had properly canceled the policy as a result of the Association's failure to pay the premium. Mead took no further action before the DISB.

The Estate of Nedoroscik and the Association assigned all of their rights under the policy to plaintiffs in July 2013 including any claims that may be available against Travelers. Plaintiffs allege in Counts I and II of their amended complaint that Travelers breached the insurance contract by improperly canceling the policy and by failing to indemnify plaintiffs for their losses. Count III avers that Travelers is estopped from denying coverage based on the words and actions of its adjuster following the fire. Finally, plaintiffs bring in Count IV of the amended complaint a claim for breach of the implied contractual duty of good faith and fair dealing.

### III.

We first address Travelers' contention that it is entitled to summary judgment in its favor on plaintiffs' breach of contract claims insofar as they are based on Travelers' purported failure to send a Notice of Intent to Cancel to Service First. As noted above,

if the Notice was not sent, cancellation of the policy is not effective.  D.C. Mun. Regs. tit. 26-A, §§ 301.1, 301.5.  Having carefully reviewed the record and the arguments of the parties, we conclude that genuine disputes of material fact exist which preclude any dispositive ruling on this issue at this time.  Whether or not a Notice of Intent to Cancel was ever sent to the broker is a matter for the jury to decide at trial.

We also note Travelers' argument that plaintiffs lack standing to challenge the insurance company's alleged failure to send the notice.  Travelers' position, which it bases on the DISB's letter to Mead, is without merit.  A letter from a DISB Consumer Services Specialist giving his interpretation of a municipal regulation without more cannot be binding on the DISB or this court.

IV.

We next consider the parties' cross-motions for summary judgment on plaintiffs' estoppel claim, as set forth in Count III of the amended complaint.  For present purposes we assume, without deciding, that a Notice of Intent to Cancel had indeed been timely sent to Service First, since otherwise the policy was not cancelled and any estoppel would be irrelevant.

Plaintiffs urge that Travelers is estopped from denying coverage for the fire by its sending a claims adjuster to assess the property and process the Association's loss for several weeks in December 2012 and January 2013.

Under the law of the District of Columbia, estoppel exists when three elements are present:

> (1) there was a representation by the defendant; (2) the party [claiming estoppel] relied upon that representation to its detriment; and (3) that reliance was reasonable.

Morris v. Buvermo Props., Inc., 510 F. Supp. 2d 112, 117 (D.D.C. 2007) (quotation marks omitted).  The party claiming estoppel "must have relied on its adversary's conduct 'in such a manner as to change his [or her] position for the worse[,]' and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading."  Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc., 467 U.S. 51, 59 (1984) (footnotes omitted) (quoting 3 J. Pomeroy, Equity Jurisprudence § 805 (S. Symons ed. 1941)).

Here neither the Association nor Mead changed any position for the worse based on the activities of the claims adjuster after the fire.  The most that Mead could reasonably have assumed was that the policy was still in force when in fact it was not.  In making this assumption, however, she did not change her position at all, much less to her detriment.  To the extent that she stands in the shoes of the Association or Nedoroscik, the situation is no different.  Both knew that the deadline to pay the premium had been extended to November 24, 2012 but that it had remained unpaid through that date.  There was no detrimental reliance by them.

While Travelers had also left a voicemail message on December 17, 2012 for the deceased Nedoroscik that Travelers was extending the time for the payment of the premium until January 1, 2013, Mead was not aware of the message until the deadline had passed.  Thus, she did not change her position for the worse based on a representation about which she knew nothing.  Nor, of course, did the Association pay the premium during this period, even if we were to assume that the Association had some knowledge of the voicemail that could be imputed to Mead.

Plaintiffs are not entitled to recover from Travelers on a theory of estoppel.  The motion of Travelers to strike plaintiffs' cross-motion as untimely will therefore be denied as moot.  Having reached this conclusion, we pause to emphasize that estoppel is an equitable doctrine.  Heckler, 467 U.S. at 59.  There is no dispute that the Association and Service First had received an actual Notice of Cancellation on September 18, 2012.  Through no fault of Travelers, which had granted several extensions of the payment date, the Association repeatedly failed to remit the premium due.  The equities plainly favor Travelers here.

V.

Plaintiffs also assert that Travelers waived any right it had under the policy to timely payment by repeatedly extending the

deadline for the Association to pay.[3]  In the District of Columbia, a waiver is the "intentional relinquishment or abandonment of a known right or privilege."  <u>Nortel Networks, Inc. v. Golf & Appel Transfer, S.A.</u>, 298 F. Supp. 2d 81, 88 (D.D.C. 2004) (quoting <u>United States v. Robinson</u>, 459 F.2d 1164, 1168 (D.C. Cir. 1972)).  It is an equitable remedy that may be invoked to avoid the injustice of a party asserting a right that it has previously surrendered.  <u>Id.</u>  Intent to waive a contractual right may be expressly stated or inferred from conduct inconsistent with the right.  <u>Id.</u>

     We note that plaintiffs make no mention of this theory in the amended complaint, and as such it is improperly raised here.  Even considering plaintiff's claim of waiver, however, we find it to be without merit.  Plaintiffs are correct that Travelers waived its right to timely payment, but only to a point.  Travelers expressly gave up its right to payment of the premium on the original due date of September 8, 2012 by granting several extensions and ultimately by extending the time for payment to January 1, 2013 in its December 17, 2012 voicemail to Nedoroscik.[4]  But there is nothing in the words or actions of Travelers to suggest that its waiver

---

[3]  Here again we assume for purposes of discussion that a Notice of Intent to Cancel was timely sent to Service First in September 2012.

[4]  It is immaterial that Nedoroscik was deceased at the time of this message.  Travelers was under no obligation to waive its right to timely payment, nor was it required to confer actual notice on the Association of its waiver.

extended any further into the future.  As discussed above, January 1 came and went with the premium unpaid.  At that point the extended window that Travelers granted plaintiffs to keep the policy in force closed.  There is no injustice to plaintiffs in requiring them to abide by the relaxed payment terms to which Travelers expressly acquiesced, especially when Travelers granted an extension several days after the date of the fire.  Even if plaintiffs could properly claim a waiver, it would not afford them the relief they seek.

VI.

We turn now to the position of Travelers that Count IV of the amended complaint, plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, must be dismissed.  In the District of Columbia, a covenant of good faith and fair dealing is implied in every contract.  Hais v. Smith, 547 A.2d 986, 987 (D.C. 1988).  "This duty prevents a party from evading the spirit of the contract, willfully rendering imperfect performance or interfering with the other party's performance."  Id. at 987-88.

Plaintiffs assert that Travelers breached the implied covenant by willfully misrepresenting to the DISB that it had sent the Notice of Intent to Cancel to Service First via its portal site when it knew that Service First had not received any such notice. In support of this contention plaintiffs point only to the representation of Service First that it did not receive a Notice of Intent to Cancel.  Regardless of whether a Notice was ever sent,

Plaintiffs have proffered no evidence that Travelers rendered any willfully imperfect performance or otherwise engaged in conduct that would breach the implied covenant of good faith and fair dealing.

While we stress that we are making no factual finding at this time as to whether any Notice of Intent to Cancel was transmitted, received, retained, or destroyed, we recognize that there are instances in which a document or other information is sent but never received.  We also reiterate that the Association had actual notice of cancellation on September 18, 2012 and received several extensions of time thereafter in which to pay the premium. Accordingly, summary judgment will be granted in favor of Travelers and against plaintiffs as to plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

VII.

Finally, Travelers seeks summary judgment in its favor to the extent plaintiffs demand the assessment of punitive damages, consequential damages, and attorneys' fees.  In the District of Columbia, punitive damages are generally unavailable in an action based on breach of contract unless the alleged breach "merges with, and assumes the character of, a willful tort."  Sere v. Grp. Hospitalization, Inc., 443 A.2d 33, 37 (D.C. 1982) (quoting Brown v. Coates, 253 F.2d 36, 39 (D.C. Cir. 1968)).  This is so even when the breach is willful, wanton, or malicious.  Washington v. Gov't Emps. Ins. Co., 769 F. Supp. 383, 388 (D.D.C. 1991).

Similarly, the District of Columbia follows the American Rule of attorneys' fees that each litigant ordinarily pays his or her own costs and fees.  Gen. Fed'n of Women's Clubs v. Iron Gate Inn, Inc., 537 A.2d 1123, 1127 (D.C. 1988).  The sole relevant exception to this rule applies only in "extraordinary cases" and requires a showing that the paying party's bad-faith conduct "has been so egregious that such fee shifting is warranted as a matter of equity."  Id. at 1127-28.

Plaintiffs have not adduced any evidence that Travelers acted in bad faith before the DISB or at any other point.  Indeed, Travelers may have breached its contract and failed to adhere to a District of Columbia insurance regulation.  Yet Travelers nonetheless had been generous with the Association in extending the premium payment date.  Furthermore, it was no secret that Travelers had notified the Association that the policy was being canceled for nonpayment of the premiums.  Summary judgment will be granted in favor of Travelers and against plaintiffs with respect to their claims for punitive damages and attorneys' fees.